The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties in the Industrial Commission Form 21 Agreement for Compensation, approved by the Commission on February 5, 1991; in the Form 26 Supplemental Agreement, approved by the Commission on January 28, 1992, and in the Pre-Trial Agreement filed on May 6, 1994, as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employment relationship existed between the parties at all relevant times.
2. Defendant-employer is a duly qualified self-insured with G.A.B. Business Services as the third party administrator.
3. The plaintiff sustained an admittedly compensable injury on February 6, 1990, as a result of which the parties entered into a Form 21 Agreement, pursuant to which the plaintiff received temporary total disability compensation from February 15, 1990 through September 11, 1991, at the rate of $365.74 per week.
4. The plaintiff received permanent partial disability compensation for a 15% rating to his back, at the rate of $365.74 per week from August 23, 1991 through June 24, 1992, pursuant to the Form 26 Agreement.
5. An I.C. Form 28B was completed on April 8, 1992, reflecting the benefits paid or owed to plaintiff.
6. The parties stipulate that in June of 1993, the plaintiff's average weekly wage would entitle him to the maximum compensation rate of $442.00, should this case be compensable.
7. Issues for determination are:
 a. Has plaintiff suffered a change of condition from the compensable injury of February 6, 1990, or in the alternative, has he sustained a second or third injury by accident on June 25, 1993 or June 30, 1993?
 b. If plaintiff's condition is compensable, to what additional benefits is he entitled?
8. The parties stipulated 117 pages of medical and rehabilitation reports into the record.
9. The following documents were received into evidence:
 a. Plaintiff's Exhibit 1, 2 pages, Driver's Log of June 25, 1993 and June 30, 1993;
 b. Plaintiff's Exhibit 2, 4 pages, Supervisor's Injury Investigation;
 c. Defendant's Exhibit 1, 2 pages, excerpt from Union Contract on Accident Reports;
d. Defendant's Exhibit 2, I.C. Form 18, dated July 7, 1993;
 e. Defendant's Exhibit 3, 4 pages, G.A.B. Activity Report; and
f. Defendant's Exhibit 4, Form 19, dated July 2, 1993.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing the plaintiff had been employed for 22 years with defendant-employer as a truck driver and was a 49 year old male. The plaintiff had received treatment for complaints of neck pain by Dr. Stafford and Dr. Kindl, his family physicians, since March 28, 1977. In addition, the plaintiff was treated for leg pain, low back pain, and left shoulder pain, all prior to February 6, 1990.
2. On February 6, 1990, plaintiff sustained a compensable injury to his lower back and left leg when he became twisted in a hose and fell backwards, landing on his left side. As a result of the admittedly compensable injury, plaintiff was treated by orthopedic surgeon Dr. James Maultsby. On September 13, 1990, an MRI indicated a herniated disc at L4-5.
3. On November 14, 1990, plaintiff complained to Dr. Maultsby of discomfort over the left intrascapula and left suprascapula regions when he extended the cervical spine.
4. On April 2, 1991, Dr. Maultsby performed an L4-5 laminotomy/discetomy. After work hardening, Dr. Maultsby rated the plaintiff as having a 20% permanent partial disability on August 22, 1991. However, on November 11, 1991, plaintiff presented to Dr. Maultsby with complaints of posterior shoulder blade pain and low back pain. Dr. Maultsby learned from the workers' compensation adjuster that plaintiff had been performing roofing work, and as a result of the increased work capacity, Dr. Maultsby reduced plaintiff's permanency rating to 15%.
5. On April 8, 1992, defendant prepared a Form 28B to close this file, with the last permanent partial disability compensation check being paid June 24, 1992.
6. The plaintiff worked pursuant to the terms of a collective bargaining agreement with the International Brotherhood of Teamsters. Section 18.2 of the Agreement provides that any employee involved in any accident shall immediately report to the employer said accident and any physical injury sustained.
7. The plaintiff contends that he was rolling landing gear to lower the loaded trailer on June 25, 1993 in Greensboro when he felt a tingling in his neck, left shoulder, chest, back, and hip. The plaintiff did not report this as an injury, but instead continued to work.
8. On June 30, 1993, the plaintiff was in Pisgah Forest, making a delivery. He testified that when rolling the gear to raise the trailer, he experienced pain in his neck and shoulders. The plaintiff did not report this as an injury. In fact, on June 30, 1993, the plaintiff spoke on several instances with dispatcher Laura Green, but did not mention any injury on either June 25 or June 30. In response to Ms. Green's inquiry about whether there were any problems, plaintiff responded that he had not had any problems and that is was a good place to make deliveries.
9. On July 1, 1993, plaintiff completed a delivery to Roanoke, Virginia, and in conversation to the dispatcher, he advised that he had a doctor's appointment for 2:00 p.m., and wanted to know how the next day was scheduled. Approximately 2 hours later, plaintiff again spoke with the dispatcher and at that time said he had a doctor's appointment for 9:00 a.m. on July 3, 1993. Ms. Green questioned the plaintiff about the appointment, and plaintiff responded that he thought he had an infection related to his gall bladder surgery. Later, Ms. Green advised plaintiff to bring in a note with the doctor's diagnosis, to which plaintiff replied that there were things about his body that were none of her business. However, during the course of these several calls, at no time did plaintiff report a work-related injury of June 25 or 30, 1993.
10. On June 2, 1993, plaintiff went to Dr. Maultsby for a cortisone injection. However, G.A.B. Agent Allison Rogers denied authorization. Later, plaintiff telephoned Ms. Rogers regarding the refusal, at which time he was advised that the file had been closed. The plaintiff responded that he had hurt his shoulder "somehow or other." Ms. Rogers advised him to file it on his group health insurance. Plaintiff then stated that he had hurt his shoulder at work, but that he didn't report it to anyone. Ms. Rogers told plaintiff that he knew the procedures for reporting injuries.
11. The plaintiff went to Jeri Hemric, terminal manager, on July 2, 1993, and he described his injury. Ms. Hemric prepared a Form 19 and an accident report. Initially, plaintiff told Ms. Hemric he hurt his shoulder on June 30 while making a delivery at Pisgah Forest. Then, he changed his story, and indicated the injury occurred at H.B. Fuller in Greensboro. Ms. Hemric changed the forms, based upon this. After she completed the forms, Ms. Hemric had the plaintiff review them for accuracy. The plaintiff made no further changes. At no time did plaintiff mention an accident as occurring on June 25, 1993.
12. On July 2, 1993, plaintiff was seen by Dr. Kindle for complaints of left shoulder pain and was authorized to remain out of work until July 7, 1993.
13. On October 15, 1993, plaintiff was seen by orthopedic surgeon Dr. James Nitka, upon referral from his family doctor. Plaintiff complained of headache with pain in the left eye, left leg pain, low back pain with radiation into the left lateral thigh and calf, and feeling of left leg being cool. The plaintiff made no mention of June 1993 injuries to Dr. Nitka. Dr. Nitka diagnosed plaintiff as having mile degenerative disc changes and spondylosis of lumbar and cervical spine, and left shoulder tendinitis.
14. On November 17, 1993, an MRI revealed a spondylitic spur along the left side at C5-6, and Dr. Nitka found this to be the cause of plaintiff's shoulder pain.
15. The greater weight of the evidence suggests that plaintiff did not sustain an injury by accident on June 25, 1993. The plaintiff had filed a number of previous workers' compensation claims, and was thus well aware of the reporting requirements. Particularly on June 30 and July 1, 1993, plaintiff spoke by telephone with his dispatcher a number of times, yet at no time did he report any injury to Ms. Green. The plaintiff contacted G.A.B. Services after being refused treatment at Dr. Maultsby's clinic; however, initially he told Ms. Rogers that he had hurt his shoulder somehow. The plaintiff did not relate the injury to work until Ms. Rogers recommended that he file the treatment on his health insurance. Additionally, when plaintiff reported the matter to Ms. Hemric, he changed his version of where the accident occurred. However, he still did not mention a second injury on June 25, 1993.
16. On July 7, 1993, plaintiff filed a Form 18 which indicated an injury on June 30, 1993 in Greensboro.
17. The plaintiff did not assert that he experienced two separate injuries on June 25 and 30 until he was confronted with the driver's logs which clearly established that he was not in Greensboro on June 30.
18. Dr. Nitka has opined that the cause of spondylitic spurs is usually arthritis in the joint, enlargement of the joint, and the spur is normally a reflection of wear and tear on the joint.
19. With respect to the 1990 compensable injury, Dr. Nitka opined that if the neck and shoulder pain preceded the 1990 accident, then the accident was not an exacerbation of the condition.
20. Dr. Nitka found there to be no material change in the condition of plaintiff's low back from the time of plaintiff's rating by Dr. Maultsby in 1991 and the undertaking of treatment by Dr. Nitka.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff has not sustained a change of condition within the meaning of N.C. GEN. STAT. § 97-47.
2. The plaintiff did not sustain an injury by accident on June 25 or 30, 1993. The Industrial Commission is the sole judge of the credibility of a witness and the weight to be given their testimony. Pollard v. Krispy Waffle, 63 N.C. App. 354,304 S.E.2d 762 (1983). In this case, plaintiff's testimony cannot be accepted as credible. The greater weight of the evidence establishes that plaintiff had worked with defendant for 22 years, and during that time, had reported a large number of accidents and injuries. Therefore, he was very familiar with the reporting requirements and procedures. Furthermore, the plaintiff did not report the alleged injury to his dispatcher, despite speaking by telephone with Ms. Green many times on June 30 and July 1, 1993. Even when asked if there had been problems, plaintiff said no, and when plaintiff told Ms. Green on July 1 that he needed to be off to go to the doctor, he did not mention a work-related injury. Furthermore, the plaintiff did not report any 1993 accident to Dr. Nitka.
3. There is no evidence to support plaintiff's contention that the shoulder condition and spondolytic spur were caused by a 1990 accident or a 1993 injury.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim is and under the law must be DENIED.
2. Each side shall pay its own costs.
FOR THE FULL COMMISSION
 S/ _________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________________ DIANNE C. SELLERS COMMISSIONER
S/ _________________________ THOMAS J. BOLCH COMMISSIONER
CMV/cnp/mj